UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| ALEXIS AGUILAR, | 1:17-cv-01190-DAD-GSA-PC |
|---|---|
| Plaintiff, | |
| v. | **FIRST SCREENING ORDER** |
| D. CARPIO, et al., | **ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND**<br>**(ECF No. 1.)** |
| | **THIRTY DAY DEADLINE TO FILE AMENDED COMPLAINT** |

**I.    BACKGROUND**

Alexis Aguilar ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. On August 14, 2017, Plaintiff filed the Complaint commencing this action. (ECF No. 1.)

The Complaint is now before the court for screening. 28 U.S.C. § 1915A.

**II.    SCREENING REQUIREMENT**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

1

that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

### III. SUMMARY OF COMPLAINT

Plaintiff is a state prisoner incarcerated at the Deuel Vocational Institution in Tracy, California. The events at issue in the Complaint allegedly occurred at California Correctional Institution (CCI) in Tehachapi, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff names as defendants D. Carpio (Mail Room Supervisor), Captain E. Schuyler (Mail Room), E. Garcia (Chief Deputy Warden, CCI), K. Holland (Warden, CCI), and Jefferey Beard (Secretary, CDCR) (collectively, "Defendants").

Plaintiff alleges as follows. Plaintiff was housed at CCI from September 12, 2014 to December 1, 2015. Plaintiff subscribed to a publication titled Artnews from April 2013 through September 2015. Compl. at 3 ¶ 10. Artnews is an art magazine published since 1902, with art ranging from prehistoric to more contemporary art, published eleven times per year.

2

On June 28, 2015, Plaintiff realized that his Artnews issues of February 2015 and June 2015 had not been delivered to him. Plaintiff submitted a form 22 request-for-interview addressed to defendant Carpio and asked her to send Plaintiff the 1819 form (Notification of Disapproval Mail/Packages/Publications CDCR 1819). Defendant Carpio was in violation of CDCR regulations and the DOM (Department Operations Manual) for failing to timely notify Plaintiff that his mail was withheld. On June 30, 2015, Plaintiff received a response from defendant Carpio, informing him that the 1819 form for the February 2015 Artnews was attached, with her explanation of why the issue was withheld. The 1819 form was dated February 13, 2015, but Plaintiff had not seen or received it in February. Defendant Carpio had signed the form February 13, 2015 as the date being "forwarded to inmate." Compl. at 4 ¶ 13. In addition, the form listed him as being housed in B-8B-210, but Plaintiff did not move into cell B-8B-210 until June 4, 2015, and he did not receive the 1819 form in February. Defendant Schuyler authorized denial of the publication. Defendant Carpio, by her actions, deprived Plaintiff of prompt notice that the Artnews publication was withheld, caused Plaintiff to be denied a timely review by someone other than the censor of the rejected material, and falsely claimed that she sent the notice timely.

Defendants C. Schuyler, E. Garcia, and K. Holland violated Plaintiff's right to receive publications, and rights to due process guaranteed to the plaintiff by the First and Fourteenth Amendments, by their failure to adequately supervise the Mail Room Supervisor subordinate to them, defendant Carpio. Supervisory defendants, C. Schuyler, E. Garcia, K. Holland, and J. Beard, have a duty to establish policies and procedures for the administration of CCI. They have a duty to perform and execute their duties in a manner consistent with state and federal law, to train and supervise subordinate employees. They failed to ensure that all staff followed departmental procedural policy, state and federal law. They also failed to ensure that Plaintiff was being treated humanely and free from retaliation, interference with his litigation, harassment, intimidation, and intentional interference with incoming and outgoing correspondence.

///

///

**Artnews Appeal**

On June 30, 2015, Plaintiff filed a form 602 appeal explaining why he should receive the withheld magazine. On July 2, 2015, Plaintiff received notification that the 602 was cancelled for exceeding time constraints. Appeals coordinator M. Dailo [not a defendant] notified Plaintiff that "the notification of disapproval was sent to you Feb. 2015, and this appeal was received in July 2015. This is well beyond the 30-day time limit." Compl. at 5 ¶ 15. Plaintiff filed another 602 based on the wrongful cancellation of the appeal and explained that defendant Carpio sent him the 1819 form on that date, forged the document, and made it appear as if it was sent in February 2015. On August 10, 2015, Plaintiff was interviewed telephonically by Appeals Coordinator J. Zanchi [not a defendant]. Plaintiff explained to Zanchi about the timeliness issue of the appeal and Zanchi told Plaintiff he would receive a response. The appeal was denied at the Second level of review by defendant E. Garcia. Plaintiff pursued the appeal to the highest level, exhausting his remedies.

**Juxtapoz Appeal**

On July 3, 2015, Plaintiff received a 1819 form dated July 2, 2015, informing him that the publication Juxtapoz was on the Centralized Disapproved Publications List (Banned List). Compl. at 5 ¶ 19. On July 29, 2015, Plaintiff filed a 602 appeal because he disagreed with this outright blanket ban. The 602 was returned to Plaintiff on July 30, 2015 and Plaintiff again submitted it on July 30, 2015, by giving it to the officers conducting mail pick-up. The Appeals Coordinator accepted the appeal, assigned it log no. CCI-0-15-01635, and assigned a due date of October 18, 2015. Plaintiff followed up on the appeal and was told on October 6, 2015 by Zanchi that the appeal "was completed on October 6, 2015 and mailed to you via institutional mail." Compl. at 6 ¶¶ 24-27. Plaintiff did not receive it and followed up with correctional counselor Vaca [not a defendant] and appeals coordinators Zanchi and Spears [not defendants] and was given a copy of the 602 from his file on October 16, 2015. Plaintiff noticed that the 602 copy was incomplete -- pages were missing -- and informed Spears, who looked for the pages and could not find them.

///

**Appeal Requesting Investigation of Juxtapoz Appeal**

On October 15, 2015, Plaintiff filed a 602 asking for an investigation of the disappearance of the Juxtapoz appeal. On October 28, 2015, the October 15th appeal was granted and Plaintiff received a "treat as original" copy of the Juxtapoz appeal. However, Plaintiff noticed that Zanchi did not conduct the investigation and neglected to interview Plaintiff face-to-face. Plaintiff pursued the October 15th appeal to the highest level of review, exhausting his remedies.

**Juxtapoz Appeal, continued**

Plaintiff noticed on his copy of the Juxtapoz appeal that it was assigned to "OPS" and defendant Carpio was tasked with conducting an interview. Compl. at 8 ¶ 39. Defendant Carpio falsely noted on the appeal that she had conducted an interview with Plaintiff on September 18, 2017 in the "H.U." (Housing Unit). Compl. at 8 ¶ 39. Plaintiff did not receive such interview.

Plaintiff alleges that defendant Carpio "retaliated, harassed, intentionally interfered with Plaintiff's grievance correspondence, and discarded his correspondence [b]ecause Plaintiff exercised his First Amendment rights to file a grievance, receive correspondence, [and] exercised his free speech by filing a grievance." Compl. at 8 ¶ 40. Plaintiff alleges that defendant Carpio harmed Plaintiff and chilled his First Amendment rights, with Carpio's conduct not undertaken to advance a legitimate penological interest.

The appeals coordinator noted on the appeal that the appeal was delivered to Plaintiff on October 7, 2015, not October 6, 2015 as Zanchi had claimed. Defendant E. Garcia denied the appeal. Plaintiff submitted the appeal to the third level reviewer on October 28, 2015. In January 2016, Plaintiff received notice that the appeal was cancelled for exceeding time constraints.

**Appeal Objecting to Cancellation of Juxtapoz Appeal**

Plaintiff filed appeal Log no. 15-05228 explaining that the cancellation of the Juxtapoz publication was made in error because he had not exceeded time constraints. The appeal was

denied at the third level, exhausting all available remedies.

**The Banned List**

Plaintiff filed numerous form 22 requests to the law library, defendant Carpio, Sgt. Whitson [not a defendant], and Warden Worland [not a defendant] for a copy of the current Centralized List of Disapproved Publications (CLDP). Defendant Carpio responded on August 31, 2015, claiming that she (Carpio) had sent Plaintiff copies of the CLDP on July 23, 2015 and August 18, 2015, but Plaintiff had not received the copies. Sgt. Whitson responded that Plaintiff could receive the list through the law library, but did not provide a copy of the list to Plaintiff. On October 7, 2015, the law librarian L. Marin [not a defendant] informed Plaintiff that he could only request to see the CLDP list in the law library. It wasn't until September 2015 that Plaintiff saw the most current list. Defendant Holland did not make the CLDP readily available to inmates at the institution.

On November 5, 2015, Plaintiff filed 602 appeal log no. 15-023342 because he had not been given notice of what publications were completely banned. The appeal was partly granted and partly denied by defendant E. Garcia. It was denied at the third level, exhausting all remedies.

Defendant Jeffery Beard deprived Plaintiff of receipt of the Juxtapoz publication because of policies enacted by him and a complete blanket ban of many publications by having a banned list, which denied Plaintiff's right to receive publications, instead of being on a case-by-case basis.

Plaintiff was transferred to High Desert State Prison on December 2, 2015. He received his own updated copy of the CLDP, dated December 31, 2015, from the law library there.

Plaintiff conducted research and discovered that Juxtapoz was placed on the banned list on February 15, 2015 for having obscene material. Plaintiff was not able to get a refund on his subscription because he was not aware that the magazine was banned prior to subscribing. The ban of Juxtapoz keeps Plaintiff uninformed about what new artists are up and coming. The blanket ban is pursuant to a statewide policy. The list of banned publications keeps growing, and many of the publications are artistic, not obscene.

**Relief Requested**

Plaintiff requests monetary damages, declaratory and injunctive relief, costs of suit, and attorney fees.

///

///

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional

harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

///

### A. Supervisory Liability and Personal Participation

Plaintiff has named defendants D. Carpio (Mail Room Supervisor), E. Garcia (Chief Deputy Warden, CCI), K. Holland (Warden, CCI), and Jefferey Beard (Secretary, CDCR), who hold supervisory positions. Plaintiff is advised that "[l]iability under [§] 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Iqbal, 556 U.S. at 676; Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009). Therefore, to the extent that Plaintiff seeks to impose liability upon any of the defendants in their supervisory capacity, Plaintiff fails to state a claim.

### B. Official and Individual Capacity

Plaintiff brings this action against defendant Carpio in her individual capacity, defendant Schuyler is both his official and individual capacities, and defendants Garcia, Holland, and Beard in their official capacities.

Plaintiff may not bring a suit for damages against Defendants in their official capacities. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities, Hafer v. Melo, 502 U.S. 21, 30 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003), or suits for declaratory or injunctive relief brought against state officials in their official capacities, Austin v. State Indus. Ins. System, 939 F.2d 676, 680 fn.2 (9th Cir. 1991). Therefore, Plaintiff fails to

state a claim for damages against Defendants in their official capacities, but he is not barred by the Eleventh Amendment from seeking injunctive or declaratory relief against Defendants in their official capacities, or from seeking money damages from Defendants in their individual capacities.

///

///

### C. Due Process -- Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of liberty or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty or property interest for which the protection is sought.

#### 1. Withheld Mail and Right to Receive Notice

Prisoners have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). An authorized, intentional deprivation of property is actionable under the Due Process Clause. See Hudson v. Palmer, 468 U.S. 517, 532, n.13, 104 S.Ct. 3194 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36, 102 S.Ct. 1148 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985). While mere negligence on the part of prison officials is not actionable as a due process violation under § 1983, Daniels v. Williams, 474 U.S. 327, 328, 106 S.Ct. 662 (1986), "a deprivation . . . caused by conduct pursuant to established state procedure, rather than random and unauthorized action," does state a § 1983 claim. Hudson, 468 U.S. at 532. In such a case, "post-deprivation remedies [will] not satisfy due process . . . ." Id.

Plaintiff seeks replacement of his withheld Juxtapoz issues from June 2015 to June 2016, which he alleges were withheld pursuant to a statewide policy. Here, it was not the prison's rejection of Plaintiff's publications that makes out a procedural due process claim; it is the *lack of notice* of that rejection under Procunier. Sorrels v. McKee, 290 F.3d 965, 972–73 (9th Cir. 2002). An inmate "has a Fourteenth Amendment due process liberty interest in

receiving notice that his incoming mail is being withheld by prison authorities." Frost v. Symington, 197 F.3d 348, 353 (9th Cir. 1999). It is undisputed that "withhold[ing] delivery of [inmate mail] must be accompanied by minimum procedural safeguards." Procunier v. Martinez, 416 U.S. 396, 417–18, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 413–14, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989).

Only if the failure to provide notice was pursuant to prison policy does this constitute a due process violation actionable under § 1983. Id. Here, Plaintiff has not alleged that failure to notify him was pursuant to prison policy. In fact, Plaintiff alleges that defendant Carpio was in violation of CDCR regulations and the Department Operations Manual for failing to timely notify him that his mail was withheld. Thus, the *failure to notify* of the rejection was unauthorized and contrary to prison policy. It constitutes at most negligence and does not state a due process violation under § 1983.

Therefore, Plaintiff fails to state a due process claim for the withholding of Plaintiff's publications or defendant Carpio's failure to notify Plaintiff that his mail was withheld.

### 2. **Appeals Process**

Some of Plaintiff's allegations against defendants Carpio and Garcia pertain to their review and handling of Plaintiff's inmate appeals.

"[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) accord Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing prisoner's administrative appeal generally cannot serve as the basis for liability in a section 1983 action. Buckley, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir. 2005) accord George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir. 1999); Vance

///

v. Peters, 97 F.3d 987, 992-93 (7th Cir. 1996).; Haney v. Htay, No. 1:16-CV-00310-AWI-SKO-PC, 2017 WL 698318, at *4–5 (E.D. Cal. Feb. 21, 2017).

Thus, Plaintiff's allegations that defendants Carpio and Garcia failed to properly process Plaintiff's appeals fail to state a cognizable claim.

### D. First Amendment

#### 1. Censorship and Interference with Mail

Plaintiff alleges that his incoming and outgoing mail rights were violated under the First Amendment when issues of the publications Artnews and Juxtapoz were withheld from him. Plaintiff claims that Defendants have violated his First Amendment right to "read what he will and when he will."

Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (*per curiam*). Nevertheless, correctional institutions and jails have a legitimate government interest in imposing certain restraints on inmate or detainee correspondence to maintain order and security. See Procunier, 416 U.S. at 413. For example, inmates and detainees may have their mail screened to ensure that there is no contraband inside. Mangiaracina v. Penzone, 849 F.3d 1191, 1195 (9th Cir. 2017).

Publishers "have a First Amendment right to communicate with prisoners by mail, and inmates have a First Amendment right to receive this mail." Prison Legal News v. Columbia Cty., 942 F. Supp. 2d 1068, 1081–82 (D. Or. 2013) (quoting Prison Legal News v. Lehman,

397 F.3d 692, 699 (9th Cir. 2005) ("PLN II")). The scope and potency of these rights are, however, "subject to substantial limitations and restrictions in order to allow prison officials to achieve legitimate correctional goals and maintain institutional security." Id. (quoting Walker v. Sumner, 917 F.2d 382, 385 (9th Cir. 1990)). To determine whether a correctional institution's regulation that "impinges on inmates' constitutional rights" is valid, the court must determine whether that regulation "is reasonably related to legitimate penological interests." Id. (quoting Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)).

The Procunier court held that censorship of direct personal correspondence involving incidental restrictions on the right of free speech of both correspondents and the prisoners is justified if censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation of inmates, and if it was no greater than was necessary to further the legitimate governmental interest involved. Procunier, 416 U.S. 396.

In Turner, the Supreme Court promulgated "a four-pronged test that guides courts in determining whether a challenged regulation passes constitutional muster." PLN II, 397 F.3d at 699 (quoting Frost, 197 F.3d at 354). Under the Turner test, courts must determine:

(1) whether the regulation is rationally related to a legitimate and neutral governmental objective;

(2) whether there are alternative avenues that remain open to the inmates to exercise the right;

(3) the impact that accommodating the asserted right will have on other guards and prisoners, and on the allocation of prison resources; and

(4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials.

Id. (citing Prison Legal News v. Cook, 238 F.3d 1145, 1149 (9th Cir. 2001) ("PLN I ") (citing Turner, 482 U.S. at 89–90, 107 S.Ct. 2254)). "The first of these factors constitutes a *sine qua non*." Id. (quoting Walker, 917 F.2d at 385). In other words, "if a regulation is not rationally related to a legitimate and neutral governmental objective, a court need not reach the remaining three factors." PLN II, 397 F.3d at 699.

In <u>Turner</u>, the United States Supreme Court applied four factors to determine whether prison regulations were constitutional because they were "reasonably related to legitimate penological interests." <u>Id.</u> at 89–90, 107 S.Ct. 2254. In <u>Bahrampour v. Lampert</u>, Mr. Bahrampour alleged in his pro se complaint, that ODC violated his First and Fourteenth Amendment rights to freedom of speech and due process by refusing to deliver certain pieces of mail to him. <u>Bahrampour v. Lampert</u>, 356 F.3d 969, 972 (9th Cir. 2004). The district court applied the <u>Turner</u> factors and concluded that the restrictions on the receipt of role-playing and sexually explicit materials were "constitutional even if they do in some minor respect infringe on plaintiff's First Amendment rights." <u>Id.</u> at 975.

In this case, Plaintiff alleges that his rights to receive the publications <u>Artnews</u> and <u>Juxtapoz</u> were violated.

### **Artnews**

Plaintiff alleges that he did not receive the February 2015 and June 2015 issues of the publication <u>Artnews</u>, an "art magazine published since 1902, with art ranging from prehistoric to more contemporary art." Compl. at 3 ¶ 10. Plaintiff alleges that he was notified of the reasons the two issues were withheld from him, but he does not indicate in the Complaint what the reasons were. Plaintiff fails to allege facts indicating what authority the prison used to withhold the two issues of <u>Artnews</u>, and whether the reasons were rationally related to a legitimate and neutral governmental objective. Therefore, Plaintiff fails to state a First Amendment claim based on the prison withholding his issues of <u>Artnews</u>. Plaintiff shall be granted leave to amend the Complaint to address this issue.

### **Juxtapoz**

Plaintiff alleges that the publication <u>Juxtapoz</u>, for which he had a subscription, was placed on the "Centralized Disapproved Publications List" (the Banned List) under statewide policy in February 2015 and <u>Juxtapoz</u> was completely banned for having obscene material. Plaintiff alleges that many of the banned publications are artistic in nature, not obscene. Plaintiff argues that the blanket ban has prevented him from learning which new artists are up-

and-coming. Plaintiff was unable to get a refund on his subscription because he was not aware that the magazine was banned prior to subscribing.

When considering prison regulations on incoming publications, "[s]ome content regulation is permissible in the prison context." Crozier v. Endel, No. 309-CV-0326-RCJ-RAM, 2010 WL 1640479, at *2 (D. Nev. Apr. 21, 2010), aff'd, 446 F. App'x 14 (9th Cir. 2011) (quoting McCabe v. Arave, 827 F.2d 634, 638 (9th Cir. 1987); see also Thornburgh, 490 U.S. at 415–16; Mauro v. Arpaio, 188 F.3d at 1059)). In light of concerns about preventing the sexual harassment of prison guards and other inmates, prison officials may prohibit receipt of sexually explicit materials. See Bahrampour, 356 F.3d at 976; Frost, 197 F .3d at 357; Mauro, 188 F.3d at 1060. Obscene speech is not protected by the First Amendment, Miller v. California, 413 U.S. 15, 24 (1973), and therefore, Plaintiff is not entitled under the First Amendment to receive a publication containing obscene material.

To the extent that Plaintiff seeks to challenge the state's finding that Juxtapoz contains obscene material, Plaintiff must allege facts demonstrating that the content of the Juxtapoz is not obscene under legal guidelines.[1] Plaintiff has not done so.

Therefore, Plaintiff fails to state a claim for a First Amendment violation for his allegations that issues of Juxtapoz were withheld from him.

### 2. **Retaliation**

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. Rizzo v. Dawson, 778 F.2d 5527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some

---

[1] Miller held that obscenity is not protected by the First Amendment and set forth these guidelines for the trier of fact: (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. Miller, 413 U.S. at 24, 93 S.Ct. at 2615 (citations omitted).

adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). The Court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

Plaintiff alleges that defendant Carpio "retaliated, harassed, intentionally interfered with Plaintiff's grievance correspondence, and discarded his correspondence [b]ecause Plaintiff exercised his First Amendment rights to file a grievance, receive correspondence, [and] exercised his free speech by filing a grievance." Compl. at 8 ¶ 40. Plaintiff's filing of grievances constitutes protected behavior, and harassment and interference with Plaintiff's correspondence are adverse actions against Plaintiff. However, Plaintiff has not established a causal connection between Plaintiff's protected behavior and the adverse actions taken against him by defendant Carpio. To state a retaliation claim, Plaintiff must allege facts demonstrating that defendant Carpio acted against him *because* of Plaintiff's grievances. Plaintiff has not done so. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. Iqbal, 556 U.S. at 678. Therefore, Plaintiff fails to state a claim for retaliation. Plaintiff shall be granted leave to file an amended complaint addressing the deficiencies in this claim found by the court.

### E. Making and Promulgating Policy

Plaintiff alleges that defendant Beard's blanket ban on publications violated Plaintiff's rights under the First and Fourteenth Amendments.

To state a claim against a defendant under section 1983, Plaintiff must allege some facts indicating that a defendant either personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). In this instance, Plaintiff claims that defendant Beard promulgated or implemented a deficient blanket ban on certain publications. Therefore, Plaintiff must allege some facts indicating that the policy itself is a repudiation of constitutional rights and is the moving force of one or more constitutional violations.

"When a supervisory official advances or manages a policy that instructs its adherents to violate constitutional rights, then the official specifically intends for such violations to occur." OSU Student Alliance v. Ray, 699 F.3d 1053, 1076 (9th Cir. 2012). "For an official to be liable for another actor's depriving a third party of his constitutional rights, that official must have at least the same level of intent as would be required if the official were directly to deprive the third party of his constitutional rights." Lacey v. Maricopa Cnty., 693 F.3d 896, 916 (9th Cir. 2012) (en banc).

To plausibly allege that a defendant implemented a constitutionally deficient policy, a plaintiff must identify the policy that is at issue and what about the policy makes it a repudiation of constitutional rights. Jack v. Cty. of Stanislaus, No. 1:17-CV-0520 AWI SAB, 2017 WL 4123930, at *6 (E.D. Cal. Sept. 15, 2017) (citing McFarland v. City of Clovis, 163 F.Supp.3d 798, 802 (E.D. Cal. 2016) (explaining requirements for alleging a plausible claim against an entity for a deficient policy, custom, or practice)). Here, Plaintiff alleges that defendant Beard created and/or promulgated a policy establishing a blanket ban on certain publications, causing the publication Juxtapoz to be inaccessible to Plaintiff on the ground that it contains obscene material.

The Complaint does not indicate that defendant Beard was present or participated in any of the actions performed by defendants Carpio and Schuyler when they withheld publications

from Plaintiff pursuant to the Banned List. Rather, the Complaint indicates that defendant Beard established a written list that violated mandatory state regulations, and the first cause of action alleges that defendants Carpio and Schuyler subjected or allowed Plaintiff to be subjected to improper censorship and mail policies and procedures. To state a claim, Plaintiff must plausibly show that the "policy is so deficient that the policy itself is a repudiation of constitutional rights . . . ." Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013). The Complaint alleges that defendant Beard's policy resulted in a complete blanket ban of publications, depriving Plaintiff of receipt of publications instead of being on a case by case basis. However, Plaintiff fails to allege facts from which the court can infer that defendant Beard intended to deprive Plaintiff of his constitutional rights. As discussed above, if Plaintiff seeks to challenge the state's finding that Juxtapoz contains obscene material, Plaintiff must allege facts demonstrating that the content of the Juxtapoz is not obscene under legal guidelines. Plaintiff has not done so.

Based on the foregoing, Plaintiff fails to state a claim against defendant Beard for making or promulgating policy.

### F. Cover-Up

Plaintiff alleges that defendant Carpio gave Plaintiff an 1819 form dated February 13, 2015, but Plaintiff had not seen or received it in February. Defendant Carpio had signed the form February 13, 2015 as the date being "forwarded to inmate," but Plaintiff did not receive the form until June 30, 2015. Plaintiff also alleges that defendant Carpio was tasked with conducting an interview with Plaintiff concerning Plaintiff's appeal about the Juxtapoz publication, and Defendant Carpio falsely noted on the appeal that he had conducted an interview with Plaintiff on September 18, 2017 in the "H.U." (Housing Unit). Plaintiff alleges that he did not receive such interview.

To the extent that Plaintiff attempts to raise a cover-up claim against defendant Carpio, for attempting to cover up what had happened, it is premature. Allegations that officials engaged in a cover-up state a constitutional claim only if the cover-up deprived a plaintiff of his right of access to courts by causing him to fail to obtain redress for the constitutional violation

that was the subject of the cover-up. Dell v. Espinoza, No. 116CV1769MJSPC, 2017 WL 531893, at *6–7 (E.D. Cal. Feb. 7, 2017) (citing see Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 625 (cover-up "allegations may state a federally cognizable claim provided that defendants' actions can be causally connected to a failure to succeed in the present lawsuit.")); Rose v. City of Los Angeles, 814 F. Supp. 878, 881 (C.D. Cal. 1993).

A cover-up claim is premature when, as here, Plaintiff's action seeking redress for the underlying constitutional violations remains pending. See Karim-Panahi, 839 F.2d at 625; Rose, 814 F. Supp. at 881 ("Because the ultimate resolution of the present suit remains in doubt, [p]laintiff's cover-up claim is not ripe for judicial consideration.")

///

///

### G. State Law Claims -- Violation of Regulations, Failure to Supervise

Plaintiff alleges a negligence claim against defendants Schuyler, Garcia, Holland, and Beard, for failure to supervise and train staff. Plaintiff alleges that these Defendants failed to ensure that all staff followed departmental procedural policy, state and federal law, and failed to ensure that Plaintiff was being treated humanely and free from retaliation, interference with his litigation, harassment, intimidation, and intentional interference with incoming and outgoing correspondence. These allegations are entirely conclusory, offering no factual allegations demonstrating that Defendants' personal conduct resulted in violation of Plaintiff's rights. Plaintiff must describe personal acts taken by Defendants in failing to do their duty.

Plaintiff also alleges that defendant Carpio violated California regulations and CDCR Rules in the Department Operations Manual. Plaintiff is informed that violation of negligence, state tort law, state regulations, rules and policies of the CDCR, or other state law is not sufficient to state a claim for relief under § 1983. Section 1983 does not provide a cause of action for violations of state law. See Galen v. Cnty. of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007). To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976); also see Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995); Gonzaga University v. Doe, 536 U.S. 273, 279

(2002). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367.

In this instance, the court fails to find any cognizable federal claims in the Complaint. Therefore, Plaintiff's state claims fail.

## V. CONCLUSION AND ORDER

For the reasons set forth above, the court finds that Plaintiff fails to state any cognizable claim against any of the Defendants in the Complaint. Therefore, the court shall dismiss the Complaint, with leave to file a First Amended Complaint curing the deficiencies in his claims found by the court.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." The court will provide Plaintiff with time to file a First Amended Complaint curing the deficiencies identified above. Plaintiff is granted leave to file an amended complaint within thirty days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

The amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of adding new defendants for unrelated issues. Plaintiff should also note that he has not been granted leave to add allegations of events occurring after the initiation of this suit on August 14, 2017.

Plaintiff is advised that an amended complaint supercedes the original complaint, Lacey, 693 F.3d at 907 n.1, and it must be complete in itself without reference to the prior or superceded pleading. Local Rule 220. Once an amended complaint is filed, the original

complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Complaint is dismissed for failure to state a claim, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint curing the deficiencies identified in this order;
4. Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:17-cv-01190-DAD-GSA-PC; and

///

5. Plaintiff's failure to comply with this order shall result in a recommendation that this case be dismissed for failure to state a claim.

IT IS SO ORDERED.

   Dated:   **July 17, 2018**               **/s/ Gary S. Austin**
                                                      UNITED STATES MAGISTRATE JUDGE