# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS AGUILAR, | 1:17-cv-01190-DAD-GSA-PC |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM** |
| v. | **(ECF No. 21.)** |
| D. CARPIO, et al., | |
| | **OBJECTIONS, IF ANY, DUE WITHIN 14 DAYS** |

## I.    BACKGROUND

Alexis Aguilar ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  On August 14, 2017, Plaintiff filed the Complaint commencing this action.  (ECF No. 1.)  On July 17, 2018, the court screened the Complaint and issued an order dismissing the Complaint for failure to state a claim, with leave to amend.  (ECF No. 14.)  On November 8, 2018, Plaintiff filed the First Amended Complaint, which is now before the court for screening.  28 U.S.C. § 1915A. (ECF No. 21.)

## II.    SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

"frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

### III.    SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is a state prisoner incarcerated at the Deuel Vocational Institution in Tracy, California. The events at issue in the First Amended Complaint allegedly occurred at the California Correctional Institution (CCI) in Tehachapi, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff names as defendants D. Carpio (Mail Room Supervisor), and Jefferey Beard (Secretary, CDCR) (collectively, "Defendants").

Plaintiff alleges as follow. Plaintiff subscribed to a publication titled Artnews from April 2013 through September 2015. Artnews is an art magazine published since 1902, with art ranging from prehistoric to more contemporary art, published eleven times per year. On many occasions Plaintiff received issues of Artnews that depicted nude breasts or nude models in

artistic settings, and none of these depictions were obscene. At all times the magazine portrayed art, not obscenity. The magazine was informative about art and artists, and as a whole did not appeal to a prurient interest nor lack serious artistic material. Pursuant to state regulations regarding obscene material, previous and subsequent <u>Artnews</u> publications were not deemed to be a threat to the institution even though they depicted more nudity than the publication in question.

On June 28, 2015, Plaintiff realized that his <u>Artnews</u> issues from February and June 2015 had not been delivered to him. Plaintiff submitted a form 22 request-for-interview addressed to defendant Carpio and asked her (Carpio) to send him the 1819 form (Notification of Disapproval Mail/Packages/Publications CDCR 1819). Defendant Carpio was in violation of CDCR regulations, the DOM (Department Operations Manual), and due process for failing to timely notify Plaintiff that his mail was withheld.

On June 30, 2015, Plaintiff received a response from defendant Carpio informing him that the 1819 form for the February 2015 <u>Artnews</u> was attached, with her explanation of why the issue was withheld. The 1819 form was dated February 13, 2015, but Plaintiff had not seen or received it in February. Defendant Carpio had signed the form February 13, 2015 as the date being "forwarded to inmate." FAC at 3 ¶ 13. In addition, the form listed Plaintiff as being housed in B-8B-210, but Plaintiff did not move into cell B-8B-210 until June 4, 2015. Prison officials claimed the publication was withheld because it met the disapproval criteria denoted in CCR Tit. 15 § 3135(d)(1), that it "portrays sexually explicit materials . . . pages 25 and 40 show the areola and nipple of female bodies." FAC at 20-21 ¶ 15.

**<u>Artnews Appeal</u>**

On June 30, 2015, Plaintiff filed a form 602 appeal explaining why he should receive the withheld magazine. On July 2, 2015, Plaintiff received notification that the 602 was cancelled for exceeding time constraints. Appeals coordinator M. Dailo [not a defendant] notified Plaintiff that "the notification of disapproval was sent to you Feb. 2015, and this appeal was received in July 2015. This is well beyond the 30-day time limit." FAC at 4 ¶ 17. Plaintiff filed another 602 based on the wrongful cancellation of the appeal and explained that defendant Carpio sent

him the 1819 form on that date, forged the document, and made it appear as if it was sent in February 2015. On August 10, 2015, Plaintiff was interviewed telephonically by Appeals Coordinator J. Zanchi [not a defendant]. Plaintiff explained to Zanchi about the timeliness issue of the appeal and Zanchi told Plaintiff he would receive a response. The appeal was denied at the Second level of review by E. Garcia [not a defendant]. Plaintiff pursued the appeal to the highest level, exhausting his remedies.

**Juxtapoz Appeal**

In June 2015, Plaintiff subscribed to an art publication titled Juxtapoz. Some articles in the publication depicted nudity, but none appeared to be pornographic or appealed to a prurient interest. On July 3, 2015, Plaintiff received a 1819 form dated July 2, 2015, informing him that the publication Juxtapoz was withheld due to it being listed on the Centralized Disapproved Publications List (Banned List). Plaintiff disagreed with the blanket ban because the publication, whose only theme is art, was not obscene. Plaintiff asserts that the ban seemed to be an exaggerated response given that CDCR allows transgender inmates with augmented breasts to walk the prison recreational and indoor setting without their shirts on, exposing their breasts, and heavily tattooed inmates are allowed to expose their tattoos which often depict nude women exposing their breasts and sometimes depict sexual intercourse.

On July 29, 2015, Plaintiff filed a 602 appeal because he disagreed with the outright blanket ban. The 602 was returned to Plaintiff on July 30, 2015, Plaintiff again submitted it on July 30, 2015, by giving it to the officers conducting mail pick-up. The Appeals Coordinator accepted the appeal, assigned it log no. CCI-0-15-01635, and assigned a due date of October 18, 2015. Plaintiff followed up on the appeal and was told on October 6, 2015 by Zanchi that the appeal "was completed on October 6, 2015 and mailed to you via institutional mail." FAC at 6-7 ¶¶ 33, 34. Plaintiff did not receive it and followed up with Appeals Coordinator Sergeant Spears [not a defendant] and was given a copy of the 602 from his file on October 16, 2015. Plaintiff noticed that the 602 copy was incomplete -- pages were missing -- and informed Spears who looked for the pages and could not find them.

///

4

**Appeal Requesting Investigation of Missing Pages of Juxtapoz Appeal**

On October 15, 2015, Plaintiff filed a 602 asking for an investigation of the disappearance of the pages from the Juxtapoz appeal. On October 28, 2015, the October 15th appeal was granted and Plaintiff received a "treat as original" copy of the Juxtapoz appeal. FAC at 7 ¶ 41. However, Plaintiff noticed that Zanchi did not conduct the investigation and neglected to interview Plaintiff face-to-face. Plaintiff pursued the October 15th appeal to the highest level of review, exhausting his remedies.

**Juxtapoz Appeal, continued**

Plaintiff noticed on his copy of the Juxtapoz appeal that it was assigned to "OPS"[1] and defendant Carpio was tasked with conducting an interview. FAC at 8 ¶ 43. Defendant Carpio falsely noted on the appeal that she had conducted an interview with Plaintiff on September 18, 2017 in the "H.U." (Housing Unit). Id. Plaintiff did not receive such interview.

Plaintiff alleges that defendant Carpio "retaliated, harassed, intentionally obstructed and/or frustrated, and discarded Plaintiff's grievance because [] Plaintiff exercised his rights to file a grievance on 7-2-15 against Defendant Carpio." Plaintiff alleges that defendant Carpio harmed Plaintiff and chilled his First Amendment rights, with Carpio's conduct not undertaken to advance a legitimate penological interest.

The appeals coordinator noted on the appeal that it was delivered to Plaintiff on October 7, 2015, not October 6, 2015 as Zanchi had claimed. E. Garcia [not a defendant] denied the appeal. Plaintiff submitted the appeal to the third level reviewer on October 28, 2015. In January 2016, Plaintiff received notice that the appeal was cancelled for exceeding time constraints.

**Appeal Objecting to Cancellation of Juxtapoz Appeal**

Plaintiff filed appeal Log no. 15-05228 explaining that the cancellation of the Juxtapoz publication was made in error because he had not exceeded time constraints. The appeal was denied at the third level, exhausting all available remedies.

**The Banned  List**

---

[1] Plaintiff does not explain the meaning of "OPS."

Prison official, defendant Beard, implemented a policy of completely banning artistic, non-obscene publications indefinitely, which prohibits Plaintiff from receiving his publication titled Juxtapoz. The ban is not on a case-by-case basis as denoted in the Thornburg case. This is an exaggerated response given that many of the art publications on the list are no more graphic than what many prisoners have tattooed on their bodies, and the tattooed inmates are never told to cover themselves. Also, Plaintiff has seen inmates receive publications whose main theme is women in lingerie in provocative poses. Since Plaintiff arrived 2009, he has not seen any violence or harassment of anyone due to art publications.

Plaintiff filed numerous form 22 requests to the law library, defendant Carpio, Sgt. Whitson [not a defendant], and Warden Worland [not a defendant] for a copy of the current Centralized List of Disapproved Publications (CLDP). Defendant Carpio responded on August 31, 2015, claiming that she (Carpio) had sent Plaintiff copies of the CLDP on July 23, 2015 and August 18, 2015, but Plaintiff had not received the copies. On October 7, 2015, the law librarian L. Marin [not a defendant] informed Plaintiff that he could only request to see the CLDP list in the law library. It wasn't until September 2015 that Plaintiff saw the most current list dated June 1, 2015.

On November 5, 2015, Plaintiff filed 602 appeal log no. 15-023342 because he had not been given notice of what publications were completely banned. The appeal was partly granted and partly denied by E. Garcia. It was denied at the third level, exhausting all remedies.

Plaintiff was transferred to High Desert State Prison on December 2, 2015. He received his own updated copy of the CLDP, dated December 31, 2015, from the law library there.

Plaintiff conducted research and discovered that Juxtapoz was placed on the banned list on February 15, 2015 for having obscene material. In June 2016, prison officials, by mistake, issued Plaintiff the January 2016 issue of Juxtapoz. The publication was never off the banned list. Plaintiff glanced at the magazine and noticed that the entire issue was art themed, although there was some depiction of nude photographs in artistic settings. None depicted sexual acts or obscene material.

**Relief Requested**

Plaintiff requests monetary damages, declaratory and injunctive relief, costs of suit, and attorney fees.

## IV.    PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010,

1026 (9th Cir. 2008).

## A.    **Official and Individual Capacity**

Plaintiff brings this action against defendant Carpio in her individual capacity and defendant Beard in his official capacity.

Plaintiff may not bring a suit for damages against defendants in their official capacities. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities, Hafer v. Melo, 502 U.S. 21, 30 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003), or suits for declaratory or injunctive relief brought against state officials in their official capacities, Austin v. State Indus. Ins. System, 939 F.2d 676, 680 fn.2 (9th Cir. 1991). Therefore, Plaintiff fails to state a claim for damages against defendant Beard in his official capacity, but he is not barred by the Eleventh Amendment from seeking injunctive or declaratory relief against defendant Beard in his official capacity, or from seeking money damages from defendant Carpio in her individual capacity.

## B.    **Due Process -- Fourteenth Amendment**

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of liberty or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty or property interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483–84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.

### 1.    **Withheld Mail and Right to Receive Notice**

Plaintiff contends that his due process rights were violated by Defendants when they withheld his magazines and failed to timely notify him that his mail was being withheld. Prisoners have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730

(9th Cir. 1974). An authorized, intentional deprivation of property is actionable under the Due Process Clause. See Hudson v. Palmer, 468 U.S. 517, 532, n.13, 104 S.Ct. 3194 (1984); Barnett v. Centoni, 31 F.3d 813, 816–17 (9th Cir. 1994). However, an unauthorized deprivation of personal property does not give rise to a viable claim for relief under the Due Process Clause of the Fourteenth Amendment. Hudson v. Palmer, 468 U.S. 517, 533 (1984); Barnett v. Centoni, 31 F.3d 813, 816–17 (9th Cir. 1994). Moreover, a negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy. Hudson, 468 U.S. at 533. California Law provides an adequate post-deprivation remedy for any property deprivations. See Cal.Gov't Code §§ 810– 895.

While authorized, intentional deprivations of property are actionable under the Due Process Clause, see Hudson, 468 U.S. at 532, n.13; Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), the Due Process Clause is violated only when the agency "prescribes and enforces forfeitures of property without underlying statutory authority and competent procedural protections," Nevada Dep't of Corrections v. Greene, 648 F.3d 1014, 1019 (9th Cir. 2011) (citing Vance v. Barrett, 345 F.3d 1083, 1090 (9th Cir. 2003)) (internal quotations omitted).

Plaintiff seeks replacement of his withheld Juxtapoz issues from June 2015 to June 2016, which he alleges were withheld pursuant to a statewide policy. Plaintiff's Due Process claim fails insofar as he contends the confiscation of his magazines was unauthorized. To the extent he argues that it was authorized, Plaintiff admits that he received notice of the confiscation, although untimely, and was able to submit an inmate appeal concerning the confiscation of the publications at issue. This was all the process that he was due. See Brown v. Galvin, No. 2:16-cv-2629 JAM DB P, 2017 WL 6611501, at *4 (E.D. Cal. Dec. 27, 2017).

The lack of notice of the prison's rejection of Plaintiff's publications may state a procedural due process claim under Procunier. Sorrels v. McKee, 290 F.3d 965, 972–73 (9th Cir. 2002). An inmate "has a Fourteenth Amendment due process liberty interest in receiving notice that his incoming mail is being withheld by prison authorities." Frost v. Symington, 197 F.3d 348, 353 (9th Cir. 1999). It is undisputed that "withhold[ing] delivery of [inmate mail] must be accompanied by minimum procedural safeguards." Procunier v. Martinez, 416 U.S. 396, 417–

18, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), overruled on other grounds by <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413–14, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989).

Only if the failure to provide notice was pursuant to prison policy does this constitute a due process violation actionable under § 1983. <u>Id.</u> Here, Plaintiff has not alleged that failure to notify him was pursuant to prison policy. In fact, Plaintiff alleges that defendant Carpio was in violation of CDCR regulations and the Department Operations Manual for failing to timely notify him that his mail was withheld. Thus, the failure to notify of the rejection was unauthorized and contrary to prison policy. It constitutes at most negligence and does not state a due process violation under § 1983.

Therefore, Plaintiff fails to state a due process claim for the withholding of Plaintiff's publications or defendant Carpio's failure to notify Plaintiff that his mail was withheld.

### 2. **Appeals Process**

To the extent that Plaintiff claims that Defendants failed to properly review or handle Plaintiff's inmate appeals, Plaintiff is unable to state a due process claim..

"[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure), citing <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." <u>Azeez v. DeRobertis</u>, 568 F. Supp. 8, 10 (N.D. Ill. 1982) <u>accord</u> <u>Buckley v. Barlow</u>, 997 F.2d 494, 495 (8th Cir. 1993); <u>see also</u> <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." <u>Azeez</u>, 568 F. Supp. at 10; <u>Spencer v. Moore</u>, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing prisoner's administrative appeal generally cannot serve as the basis for liability in a section 1983 action. <u>Buckley</u>, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible.

Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir. 2005) accord George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir. 1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir. 1996).; Haney v. Htay, No. 1:16-CV-00310-AWI-SKO-PC, 2017 WL 698318, at *4–5 (E.D. Cal. Feb. 21, 2017).

Thus, Plaintiff's allegations that either of the Defendants failed to properly process Plaintiff's appeals fail to state a cognizable due process claim.

**C.**     **First Amendment**

**1.**     **Censorship and Interference with Mail**

Plaintiff claims that Defendants violated his rights under the First Amendment. Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (*per curiam*). Nevertheless, correctional institutions and jails have a legitimate government interest in imposing certain restraints on inmate or detainee correspondence to maintain order and security. See Procunier, 416 U.S. at 413. "[A]n inmate retains those First Amendment rights not 'inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" Prison Legal News v. Cook, 238 F.3d 1145, 1149 (9th Cir.2001).

Publishers "have a First Amendment right to communicate with prisoners by mail, and inmates have a First Amendment right to receive this mail." Prison Legal News v. Columbia Cty., 942 F. Supp. 2d 1068, 1081–82 (D. Or. 2013) (quoting Prison Legal News v. Lehman, 397 F.3d 692, 699 (9th Cir. 2005). The scope and potency of these rights are, however, "subject to substantial limitations and restrictions in order to allow prison officials to achieve legitimate correctional goals and maintain institutional security." Id. (quoting Walker v. Sumner, 917 F.2d 382, 385 (9th Cir. 1990)). To determine whether a correctional institution's regulation that "impinges on inmates' constitutional rights" is valid, the court must determine whether that regulation "is reasonably related to legitimate penological interests." Id. (quoting Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)).

The Procunier court held that censorship of direct personal correspondence involving incidental restrictions on the right of free speech of both correspondents and the prisoners is justified if censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation of inmates, and if it was no greater than was necessary to further the legitimate governmental interest involved. Procunier, 416 U.S. 396.

In Turner, the Supreme Court promulgated "a four-pronged test that guides courts in determining whether a challenged regulation passes constitutional muster." PLN II, 397 F.3d at 699 (quoting Frost, 197 F.3d at 354). Under the Turner test, courts must determine:

(1) whether the regulation is rationally related to a legitimate and neutral governmental objective;

(2) whether there are alternative avenues that remain open to the inmates to exercise the right;

(3) the impact that accommodating the asserted right will have on other guards and prisoners, and on the allocation of prison resources; and

(4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials.

Id. (citing Prison Legal News v. Cook, 238 F.3d 1145, 1149 (9th Cir. 2001) (citing Turner, 482 U.S. at 89–90, 107 S.Ct. 2254)). "The first of these factors constitutes a *sine qua non*." Id. (quoting Walker, 917 F.2d at 385). In other words, "if a regulation is not rationally related to a legitimate and neutral governmental objective, a court need not reach the remaining three factors." Prison Legal News v. Lehman, 397 F.3d 692, 699 (9th Cir. 2005).

In Bahrampour v. Lampert, 356 F.3d 969, 972 (9th Cir. 2004), Mr. Bahrampour alleged in his *pro se* complaint, that Oregon Department of Corrections violated his First and Fourteenth Amendment rights to freedom of speech and due process by refusing to deliver certain pieces of mail to him. The district court applied the Turner factors and concluded that the restrictions on the receipt of role-playing and sexually explicit materials were "constitutional even if they do in some minor respect infringe on plaintiff's First Amendment rights." Id. at 975.

In this case, Plaintiff alleges that his rights to receive the publications <u>Artnews</u> and <u>Juxtapoz</u> were violated. Plaintiff alleges that he did not receive the February or June 2015 issues of the publication <u>Artnews</u>, an art magazine published since 1902, with art ranging from prehistoric to more contemporary art. FAC at 2 ¶ 8. Plaintiff was told that the February issue was withheld as in violation of CCR Tit. 15 § 3135(d)(1) because the magazine portrays sexually explicit materials . . . page 25 & 40 shows the areola and nipple of female bodies." FAC at 3-4 ¶ 15.

Section 3135(d)(1) provides:

(d) Inmates shall not possess or have under their control obscene material and/or mail containing information concerning where, how, or from whom obscene material may be obtained. Obscene material means catalogs, advertisements, brochures, and/or material taken as a whole, which to the average person, applying contemporary statewide standards, appeals to the prurient interest. It is material which taken as a whole, depicts sexual conduct, and lacks serious literary, artistic, political, or scientific value. Additionally, material is considered obscene when it appears from the nature of the matter or the circumstances of its dissemination, distribution or exhibition that it appeals to deviant sexual groups. Material subject to the test of the above includes, but is not limited to, pictures or images that depict:

(1) Sexually explicit materials, which are defined as materials that show frontal nudity including personal photographs, drawings, and magazines and pictorials that show frontal nudity.

Cal. Code Regs. tit. 15, § 3135

When considering prison regulations on incoming publications, "[s]ome content regulation is permissible in the prison context." <u>Crozier v. Endel</u>, No. 3:09-CV-0326-RCJ-RAM, 2010 WL 1640479, at *2 (D. Nev. Apr. 21, 2010), <u>aff'd</u>, 446 F. App'x 14 (9th Cir. 2011) (quoting <u>McCabe v. Arave</u>, 827 F.2d 634, 638 (9th Cir. 1987); <u>see</u> <u>also</u> <u>Thornburgh</u>, 490 U.S. at 415−16; <u>Mauro v. Arpaio</u>, 188 F.3d at 1059)). In light of concerns about preventing the sexual harassment of prison guards and other inmates, prison officials may prohibit receipt of sexually explicit materials. <u>See</u> <u>Bahrampour</u>, 356 F.3d at 976; <u>Frost</u>, 197 F .3d at 357; <u>Mauro</u>, 188 F.3d at 1060. The court finds that Section 3135(d)(1) is rationally related to a legitimate and neutral governmental objective. Therefore, Defendants did not violate Plaintiff's First Amendment rights by withholding the <u>Artnews</u> issues because they contained sexually explicit materials.

Section 3135(d) also provides that:

> Text-only material shall not be considered obscene unless designated by the Division of Adult Institutions (DAI). DAI shall then place the designated text-only material on the Centralized List of Disapproved Publications, subject to subsection 3134.1(e). Cal. Code Regs, tit. 15, § 3135(d).

Plaintiff alleges that the publication <u>Juxtapoz</u> was placed on the Centralized Disapproved Publications List (the "Banned List") under statewide policy in February 2015 and was completely banned for having obscene material. This indicates that the DAI made a determination that <u>Juxtapoz</u> contained obscene content. Obscene speech is not protected by the First Amendment, <u>Miller v. California</u>, 413 U.S. 15, 24 (1973), and therefore, Plaintiff is not entitled under the First Amendment to receive a publication containing obscene material. The court finds that the placement of materials on the Banned List under Section 3135(d)'s is rationally related to a legitimate and neutral governmental objective. Therefore, Defendants did not violate Plaintiff's First Amendment rights by withholding the <u>Juxtapoz</u> issues because they contained sexually explicit materials.

### 2. <u>Retaliation</u>

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. <u>Rizzo v. Dawson</u>, 778 F.2d 5527, 532 (9th Cir. 1985); see also <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135 (9th Cir. 1989); <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005); <u>accord</u> <u>Watison v. Carter</u>, 668 F.3d 1108, 1114-15 (9th Cir. 2012); <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009).

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. <u>Bruce v. Ylst</u>, 351 F.3d 1283, 1288 (9th Cir. 2003). The Court must "'afford appropriate deference and flexibility' to prison officials

in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (quoting Sandin, 515 U.S. at 482). The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

Plaintiff alleges that defendant Carpio retaliated against him by harassing him and discarding his grievance because Plaintiff filed a grievance against defendant Carpio on July 2, 2015. Plaintiff's filing of grievances constitutes protected behavior, and harassment and interference with Plaintiff's grievances are adverse actions against Plaintiff. However, Plaintiff has not established a causal connection between Plaintiff's protected behavior and the adverse actions taken against him by defendant Carpio. To state a retaliation claim, Plaintiff must allege facts demonstrating that defendant Carpio acted against him *because* of Plaintiff's grievances. Plaintiff has not done so. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. Iqbal, 556 U.S. at 678. Therefore, Plaintiff fails to state a claim for retaliation.

### D.    Promulgating or Implementing Policy

Plaintiff alleges that defendant Beard's promulgation or implementation of the Banned List of publications violated Plaintiff's rights under the First and Fourteenth Amendments.

To state a claim against a defendant under section 1983, Plaintiff must allege some facts indicating that a defendant either personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). "When a supervisory official advances or manages a policy that instructs its adherents to violate constitutional rights, then the official specifically intends for such violations to occur." OSU Student Alliance v. Ray, 699 F.3d 1053, 1076 (9th Cir. 2012). "[T]hat official must have at least the same level of intent as would be required if the official were directly to deprive the third party

of his constitutional rights." Lacey v. Maricopa Cnty., 693 F.3d 896, 916 (9th Cir. 2012) (en banc).

Plaintiff fails to allege facts from which the court can infer that defendant Beard intended to deprive Plaintiff of his constitutional rights by implementing the Banned List, or that the policy itself caused a constitutional violation against Plaintiff. Therefore, Plaintiff fails to state a claim against defendant Beard for making or promulgating a deficient policy.

**E.    Cover-Up**

Plaintiff alleges that defendant Carpio gave Plaintiff an 1819 form dated February 13, 2015, which Plaintiff had not seen or received in February. Defendant Carpio dated the form February 13, 2015 as the date being "forwarded to inmate," but Plaintiff did not receive the form until June 30, 2015. Plaintiff also alleges that defendant Carpio was tasked with conducting an interview with Plaintiff concerning Plaintiff's appeal about the Juxtapoz publication, and Defendant Carpio falsely noted on the appeal that she had conducted an interview with Plaintiff on September 18, 2017 in the "H.U." (Housing Unit). Plaintiff alleges that he did not receive such interview.

To the extent that Plaintiff attempts to raise a cover-up claim against defendant Carpio for attempting to cover up what had happened, the claim is premature. Allegations that officials engaged in a cover-up state a constitutional claim only if the cover-up deprived a plaintiff of his right of access to courts by causing him to fail to obtain redress for the constitutional violation that was the subject of the cover-up. Dell v. Espinoza, No. 116CV1769MJSPC, 2017 WL 531893, at *6–7 (E.D. Cal. Feb. 7, 2017) (citing see Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 625 (cover-up "allegations may state a federally cognizable claim provided that defendants' actions can be causally connected to a failure to succeed in the present lawsuit.")); Rose v. City of Los Angeles, 814 F. Supp. 878, 881 (C.D. Cal. 1993).

A cover-up claim is premature when, as here, Plaintiff's action seeking redress for the underlying constitutional violations remains pending. See Karim-Panahi, 839 F.2d at 625; Rose, 814 F. Supp. at 881 ("Because the ultimate resolution of the present suit remains in doubt, [p]laintiff's cover-up claim is not ripe for judicial consideration.")

## F.      State Law Claims -- Violation of CDCR Rules and Regulations

Plaintiff alleges that defendant Carpio violated California regulations and CDCR rules in the Department Operations Manual.  Violation of state tort law, state regulations, rules and policies of the CDCR, or other state law is not sufficient to state a claim for relief under § 1983. Section 1983 does not provide a cause of action for violations of state law.  See Galen v. Cnty. of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007).  To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights.  See Paul v. Davis, 424 U.S. 693 (1976); also see Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995); Gonzaga University v. Doe, 536 U.S. 273, 279 (2002).  Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law.  See 28 U.S.C. § 1367.

In this instance, the court fails to find any cognizable federal claims in the First Amended Complaint.  Therefore, Plaintiff's state claims fail.

## V.      CONCLUSION AND RECOMMENDATIONS

For the reasons set forth above, the court finds that Plaintiff fails to state any cognizable claim against any of the Defendants in the First Amended Complaint.  Therefore, the court shall recommend that this case be dismissed for failure to state a claim.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires."  However, the court previously granted Plaintiff leave to amend the complaint, with ample guidance by the court, and Plaintiff has now filed two complaints without stating any claims upon which relief may be granted under § 1983.  The court is persuaded that Plaintiff is unable to allege any facts, based upon the circumstances he challenges, that would state a cognizable claim.  "A district court may deny leave to amend when amendment would be futile."  Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013).  The court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted.  28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

///

Therefore, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.      This case be DISMISSED, with prejudice, for failure to state a claim upon which relief may be granted under § 1983; and

2.      The Clerk be directed to CLOSE this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen days** of the date of service of these findings and recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. Nov. 18, 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **July 29, 2019**                        **/s/ Gary S. Austin**
                                                        UNITED STATES MAGISTRATE JUDGE